FILED & ENTERED

APR 14 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY ngo           DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No.: 8:08-bk-13809-TA |
| Reza Kuchecki, | Adversary No.: 8:08-ap-01389-TA |
| | Chapter: 7 |
| | STATEMENT OF DECISION |
| Debtor(s), | |
| Mahmood K Rafsanjani | |
| Plaintiff(s), | Date:   April 12, 2010<br>Time:   10:00 a.m.<br>Location:  5B |
| Vs. | |
| Reza Kuchecki | |
| Defendant(s). | |

This matter was tried before the Court April 12, 2010. All exhibits from each side were admitted into evidence. The testimony of the witnesses and arguments of counsel were considered. After taking the matter under submission, the Court renders the following decision.

- 1

**1. Background**

There is no substantial dispute over the facts.  Plaintiff and the debtor are cousins. Both apparently are immigrants from Russia. Debtor borrowed monies from the plaintiff, apparently as part of a joint venture to acquire and operate a gasoline station in Torrance.  There is some dispute over whether the debtor adequately documented the plaintiff's interest in the venture. It matters little in the end as the venture proved to be a money-loser.  Debtor signed a May, 2000 promissory note for funds advanced by plaintiff, but debtor could not pay.  Plaintiff sued debtor and obtained a judgment in the sum of $62,000 principal plus $38,420 interest, for a total of $100,420.  About two weeks after the judgment was entered, this Chapter 7 bankruptcy was filed on July 2, 2008.

Debtor filed his Chapter 7 petition and schedules *in pro per.*  Apparently, debtor relied at least in part on advice of a bookkeeper in preparing the schedules.  The petition and schedules were deficient in several particulars.  Among the alleged deficiencies were: failure to reveal that debtor was, in fact, married[1]; debtor listed no vehicles on Schedule B although at the time he leased a 2004 Mercedes Benz, owned a second, older, high-mileage Mercedes and owned a third junked car that was inoperable; the value given in the schedules for debtor's wholly-owned corporation, Capo, Inc. dba Capo Valley Auto, was only $300, although plaintiff suspects this number is low; average monthly income and expenses each were reported as $3700, and no schedules D, E or F of creditors were filed although at the time debtor did owe some debt and certainly owed the judgment to plaintiff.  Debtor submitted to an examination under oath at the §341a first meeting of creditors conducted by the trustee, Thomas Casey, on

---

[1] At Schedule I his marital status was given as "S."

- 2

August 11, 2008. The debtor repeated under oath at the first meeting that the schedules were complete and accurate. The bookkeeper was there as well to assist. Lawyers representing both plaintiff and Madison Harbor, ALC, a law firm allegedly owed money by debtor, were there to augment the trustee's questions. Questions were posed on his marital status and well as the value and composition of his corporation, Capo, Inc. Under oath, debtor admitted he was married. He also described the nature of the corporation and its assets. The trustee concluded the examination announcing on the record that he did not see any assets that could be administered for benefit of creditors as Capo, Inc. appeared to be primarily a service-based business largely devoid of tangible assets that could be liquidated   The trustee shortly thereafter filed a "no asset" report.

On or about December 4, 2008 debtor filed amended schedules with assistance of counsel. Although most of the obvious deficiencies of the earlier filing were corrected, debtor still did not correctly report his married status at paragraph 16 of the Amended Statement of Affairs. He did, however, amend Schedule C wherein virtually all available assets of the estate were claimed as exempt. The schedules were amended a second time on or about April 2, 2009 to add a creditor.

This adversary proceeding was commenced October 6, 2008 asserting claims that the discharge should be denied under 11 U.S.C. §727(a)(4)(A) [false oath or account], §727(a)(3) [failing to keep accurate records] and §727(a)(5)[ failure to explain loss of assets].

**2. Legal Standards**

It is, of course, expected that debtors will *carefully* prepare their schedules and fully reveal *all* assets and debts owed, and answer correctly and fully each and every question

- 3 -

posed either through the forms or by the trustee.  Neither the Court, nor debtors nor any creditor can or should take lightly the giving of wrong or incomplete answers under oath.  The entire system depends on the good faith compliance by debtors with their responsibilities to tell the truth.  Moreover, it is not an excuse when debtors rely upon incompetent third parties to prepare their schedules.  Ultimately, the debtor adopts the work product, however inadequate, *as his own* when he signs the schedules under oath.

But it is also quite clear that wrong or incomplete answers are not *ipso facto* fatal to the debtor's discharge.  Instead, under 11 U.S.C. §727(a) the court must evaluate the materiality of the missing information and the knowledge and intent with which any wrong answer is given or omission made. *In re Khalil*, 379 B.R. 163 (9th Cir. BAP 2007) *citing Roberts v. Erhand (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005) *aff'd* 241 Fed. Appx. 420 (9th Cir. 2006).  Sloppiness or even recklessness are not alone sufficient to deny a discharge under §727, but the number of misstatements or omissions, taken together with failure to utilize opportunities to correct the errors, is probative of whether the misstatements were intentional and fraudulent. *Kahlil.* 379 B.R. at 173-76 *citing Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 565-66 (Bankr. S.D. Cal. 1996) and *Martin Marrietta Materials Southwest, Inc. v. Lee (In re Lee)*, 309 B.R. 468, 477 (Bankr. W.D.Tex. 2004).  In other words, depending on the circumstances, the fraudulent intent of the debtor may be inferred, particularly if the misstatements or omissions go to material issues, and the debtor fails to correct the record.  *Kahlil*, 379 B.R. at 175 *citing Coombs* 193 B.R. at 565-66.

Plaintiff cites *United States v. Swenson (In re Swenson)*, 381 B.R. 272, 293 (Bankr. E.D.Cal. 2008) for the proposition that a more stringent standard applies; *any* false matter sworn under oath is grounds for denying the discharge.  But this is a misreading of *Swenson.*

- 4

First, *Swenson* is completely distinguishable on its facts.  *Swenson* involved a continuing concealment of the debtors' secret beneficial interest in their home, ostensibly titled in the names of relatives. Since the court found that the debtors deliberately and continually concealed their beneficial interest to defeat the claims of the IRS, while continuing in uninterrupted use and enjoyment of the residence, the *Swenson* court concluded this was a "knowing" and "fraudulent" concealment for purposes of §§727(a)(2)(A) and (4)(A). *Id.* at 295-96.  Unlike the case at bench, there is not the slightest suggestion in *Swenson* that the misrepresentation was inadvertent, immaterial or a *bona fide* mistake.  Rather, it was part of an ongoing and quite deliberate scheme to evade creditors while keeping assets of considerable value.  A careful review of *Swenson* reveals that its holding of the "knowing" and "fraudulent" standards under §727(a)(2) is indistinguishable from that of *Kahlil, Roberts, Coombs* and *Lee,* as discussed above.

  In addition to intent, there is also the question of materiality in this case.  The simple fact of the matter is that none of the omissions amounted to very much.  Whether Capo, Inc. was worth only $300, as originally stated, or was worth more like $5,000 as appears in the amended schedules, is completely subjective and matters very little.  It was and is the debtor's leased auto shop, entirely based upon the continuing personal efforts of the debtor as it has no tangible assets beyond a few old tools and table and chairs. So no one else could extract any value from it without the full and continued cooperation of the debtor.  The same could be said about the allegedly under-reported income generated.  Plaintiff argues he detected a $79,000 discrepancy between the reported annual/monthly income and the bank statements. The problem here is that debtor testified this represented a series of loans or gifts from family members, received in 2008 as needed to keep the small business alive. Even if plaintiff's

numbers were accurate and they represent unreported sales, no analysis was given as to the cost of sales so the gross numbers are not very illuminating. From all indications this small repair shop was a very marginal operation. In any event, all tangible assets as well as the revised value for Capo, Inc. were well under the amount of exemptions claimed by debtor and so this was still clearly a "no-asset case." The same could be said about debtor's marital status. Debtor testified that his new wife came to this country recently before the petition on some kind of a trial basis and that she owns no property and has no income whatsoever; she reportedly does not even have a social security number. Misstatements concerning assets that have no impact on administration of the case do not provoke an inference of fraudulent intent and are not normally sufficient to prevent discharge under §727(a)(4). *Kahlil*, 379 B.R. at 172 *citing Fogal Legware of Switz. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999). This does not change the holding of cases like *In re Roberts, supra,* that a false statement may be material even in absence of direct financial prejudice to creditors. *Id.* 331 B.R. at 883. It merely clarifies that the misstatement must normally have significance in some other way such as leading to other information of consequence for the administration of the estate. *Id.*; *Wills*, 243 B.R. at 63. But here the debtor amended his schedules with assistance of counsel within about five months of the original petition to correct nearly all of the omissions (although inexplicably not as to marital status). The trustee did not move to reopen as clearly this was still a no-asset case (by a very considerable margin) and the additional information did not change the picture for creditors in any meaningful way. In sum, the Court finds that none of the omissions or misstatements were material, almost all were corrected within a reasonable time and, considering debtor's relatively forthright answers given at the §341a meeting, no inference of fraudulent intent can be taken.

Plaintiff does allege omissions that, *had they been substantiated*, would have been very material and supportive of an inference of fraudulent intent. For example, plaintiff alleges that three unscheduled parcels of real property were somehow owned in whole or in part by the debtor, based solely upon an investigator's report. Debtor denied any ownership interest. The issue came to nothing largely because of a failure of proof. Plaintiff offered no title reports into evidence and did not offer the author of the report's testimony. So no conclusion can be reached on why the author suggested an ownership interest of the debtor in the report. As far as anyone knows, the report is just mistaken on this subject. Plaintiff might have offered certified copies of documents such as grant deeds, or trust deeds bearing the debtor's signature, tax bills, or anything tending to substantiate a real interest in these properties, but he did not. Certainly, something as important as the debtor's discharge cannot turn upon vague inferences from such flimsy evidence.

Plaintiff offered little or no evidence to substantiate claims under sections 727(a)(3) or (a)(5) either. If failure to preserve or keep records was material, this was never shown or explained satisfactorily by plaintiff. There was no evidence offered that any such records were ever destroyed. Similarly, if there were any unexplained loss or deficiency of assets, that was likewise never explained or substantiated. If debtor ever had assets of any size or value, or ever said that he did, this was never shown at trial.

**3. Conclusion**

The Court sees no basis for denying discharge under any of the subsections of 11 U.S.C. §727(a). The original schedules were admittedly inadequate but were largely corrected in the amended schedules. No intent to evade or conceal can be inferred and no basis for a

finding of fraudulent intent appears.  Judgment shall be entered in favor of the defendant on all claims in the complaint.  Defendant's counsel shall submit a proposed judgment consistent with this Statement of Decision, which statement shall serve as findings of fact and law as required under FRBP 7052.

### 

DATED: April 14, 2010

*Theodor C. Albert*
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:
**1)** Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3) Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4**) **Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)  STATEMENT OF DECISION
was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of April 13, 2010, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Thomas H Casey     msalustro@tomcaseylaw.com, tcasey@ecf.epiqsystems.com
Thomas J Polis     tom@polis-law.com
Darren G Smith     smithlaw@fea.net
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page

# CERTIFICATE OF NOTICE

```
District/off: 0973-8          User: admin              Page 1 of 1               Date Rcvd: Apr 14, 2010
Case: 08-01389                Form ID: pdf031          Total Noticed: 5

The following entities were noticed by first class mail on Apr 16, 2010.
aty          +Darren G Smith,   5001 Birch St,   Newport Beach, CA 92660-2116
aty           Thomas J Polis,   Polis & Associates, APLC,   19800 MacArthur Blvd,   Ste 1000,
                Irvine, CA  92612-2433
ust          +United States Trustee (SA),   411 W Fourth St., Suite 9041,   Santa Ana, CA 92701-8000
dft          +Reza Kuchecki,   48 Stoney Pointe,   Laguna Niguel, CA 92677-1001

The following entities were noticed by electronic transmission on Apr 15, 2010.
tr           +E-mail/Text: msilva@tomcaseylaw.com                                  Thomas H Casey,
                22342 Avenida Empresa, Suite 260,   Rancho Santa Margarita, CA 92688-2141
                                                                                              TOTAL: 1

             ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
pla           Mahmood K Rafsanjani
                                                                                           TOTALS: 1, * 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

**Date: Apr 16, 2010**          **Signature:** _Joseph Speetjens_